BEFORE THE SECOND DIVISION, AUGUST 24, 1939

**No. 41984.**—Protest 926457–G of Chicago Tubing & Braiding Co. (New York).

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced in the one instance as metal hose compensators and in the other as steel compensators. Duty was

levied thereon at the rate of 45 percent ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 30 percent ad valorem under the provision in paragrapgh 328 of said act for—

flexible metal tubing or hose, whether covered with wire or other material, including any appliances or attachments affixed thereto, not specially provided for, and rigid iron or steel tubes or pipes prepared and lined or coated in any manner suitable for use as conduits for electrical conductors.

The plaintiff offered in evidence the testimony of a single witness, K. H. Evert, production manager of the Chicago Tubing & Braiding Co., the plaintiff herein. No evidence was introduced by the Government.

At the hearing held in Chicago on November 1, 1938, said witness testified that he was familiar with the merchandise described in entry 790963 as "150 millimeter inside diameter, over-all length 685 millimeters, steel-compensator type B," and also with the merchandise described in entry 856480 as "150 millimeter inside diamcter, 4 metal hose compensators, hydra-DRP, type B. o/G "; that the former is represented by the illustration marked "B" and the latter by the illustration designated "B. o. G." on page 3 of a certain pamphlet, entitled, "Hydra Metal Tube Compensators," published by the plaintiff corporation and admitted in evidence herein as Illustrative Exhibit A; that the merchandise described on the invoices as "8 metal hose compensators, inside diameter 100 millimeters, length 700 millimeters, expansion 35 millimeters" is the same as type B. o. G.; that all of these compensators are more commonly known as equalizers; that they are fixtures used to take up elongations or compressions in pipe lengths; that they are inserted between pipe lines and serve as equalizers between the points where expansion and contraction occur; and that thcy are called joints or couplings.

At this juncture the witness identified a cross-section of one of the imported compensators, which was admitted in evidence as Illustrative Exhibit B. A double-S shaped piece of steel was then identified by the witness and admitted in evidence as Illustrative Exhibit C. At the same time a complete 2-inch compensator or equalizer similar to the articles here imported, only without armour, was admitted in evidence as Illustrative Exhibit D.

At the close of the witness' testimony, the case was transferred back to New York, the port of entry, for the purpose of enabling the plaintiff to complete his proof.

It is evident from an examination of the samples that the so-called compensators or equalizers are not flexible, but are rigid articles of steel. While on page 5 of the record, in answer to a question by plaintiff's counsel, the witness referred to the illustration on page 3 of Illustrative Exhibit A as a piece of flexible tubing, there is no evidence that the article in question is a piece of flexible tubing and an examination of the samples would not so indicate.

Moreover, there is no evidence in the record that the so-called compensators or equalizers are suitable for use as conduits for electrical conductors. Apparently it was the intention of the plaintiff to offer further evidence at New York. However, this was not done.

Therefore, on the entire record, we hold as a matter of law that the plaintiff has failed to sustain the burden resting upon him of proving the collector's classification to be erroneous. All claims are therefore overruled and judgment will be rendered accordingly.